IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DIONISIA WINSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1184 |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Dionisia Winston ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for Supplemental Security Income on January 7, 2013. (Tr. at 21, 170-78.)[2] Her application was denied initially (Tr. at 65-80, 114-17), and that decision was upheld upon reconsideration (Tr. at 81-96, 97-113, 120-24). Thereafter,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 125.) Plaintiff attended the subsequent hearing on January 30, 2015, along with her attorney and an impartial vocational expert. (Tr. at 21.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 33), and, on July 31, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: borderline intellectual functioning, bipolar disorder, and depression. (Tr. at 23.) The ALJ found at step three that none of these impairments, singly or in combination, met or equaled a disability listing. (Tr. at 24-25.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she retained the ability to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

> the claimant can perform simple, routine, repetitive[] work tasks[,] meaning tasks which apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, with the ability to deal with problems involving several concrete variables in or from standardized situations. The claimant can occasionally interact with co-workers and supervisors. She cannot maintain sustained interaction with the general public. The claimant should not work in a [f]ast paced or production based work environment[,] but can do entry level or goal oriented work.

(Tr. at 25-26.) At step four, the ALJ determined that Plaintiff had no past relevant work. (Tr. at 32.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, she could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 32-33.)

Plaintiff now challenges the ALJ's RFC assessment in two respects. First, Plaintiff contends that the ALJ failed to comply with the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). In particular, Plaintiff argues that the RFC in the present case does not sufficiently encompass the moderate limitations in concentration, persistence, or pace identified at step three of the sequential analysis. Second, Plaintiff contends that the ALJ failed to properly consider whether she could sustain a 40-hour workweek. After a thorough review of the records, the Court finds that neither of these contentions merit remand.

    A.     Concentration, Persistence, and Pace

At step three of the sequential analysis, the ALJ determined that Plaintiff has moderate limitations in concentration, persistence, and pace. In Mascio, the Fourth Circuit noted that where such limitations are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's

limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted).

In the present case, as noted above, the ALJ found Plaintiff moderately limited in terms of concentration, persistence, or pace at step three of the sequential analysis. In doing so, the ALJ noted that:

> [t]he claimant testified that while her long-term memory is O.K., her short-term memory is poor. The claimant further reported that she can pay attention for only ten minutes and that her condition affects her memory, understanding, and ability to comp[l]ete tasks. She further reported that she cannot remember her phone number and that she forgets to finish doing things until the next week. She stated that it is hard for her to follow written instructions and that spoken instructions must be repeated for her to get the meaning of what she needs to do. Agency examining psychologist Anthony Smith, Ph.D. noted that the claimant was able to complete serial 3's backwards from 50 with no mistakes and determined that the claimant's intellectual ability appeared to be in the below average range. Overall, the evidence supports a moderate restriction in this area.[5]

---

[5] Although Plaintiff does not explicitly contend that this determination is not supported by substantial evidence, Plaintiff does imply that Plaintiff has marked, rather than moderate, restrictions in concentration, persistence and pace. On this point, Plaintiff first contends that the ALJ failed to consider Plaintiff's memory problems. However, as reflected in the discussion quoted above, the ALJ explicitly considered Plaintiff's memory problems in making her determination. In addition, Plaintiff notes that the ALJ misquoted Dr. Smith because Dr. Smith's report states that Plaintiff was "unable to complete serial 3's backwards from 50 with no mistakes."

(Tr. at 24-25.) The ALJ noted that the limitations identified in that discussion were not a residual functional capacity assessment, and in assessing Plaintiff's RFC, the ALJ then found that Plaintiff's impairments limited her to simple, routine, repetitive work tasks, with further restrictions to only occasional interactions with co-workers and supervisors, no sustained interaction with the general public, and a work environment which was not fast-paced or production-based but could include "entry level or goal oriented work." (Tr. at 25-26.)

Plaintiff now argues that the RFC restriction to simple, routine, repetitive tasks in a work environment that is not "[f]ast-paced or production based" fails to adequately address her moderate limitations in concentration, persistence, or pace. However, as Defendant correctly notes, a recent decision in this District, Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *6-9 (M.D.N.C. July 26, 2016), specifically addressed the issue of whether such restrictions adequately account for moderate limitations in concentration, persistence, or pace. In Grant, the court undertook an in-depth analysis of the case law from other circuits underpinning the Fourth Circuit's decision in Mascio. After "review[ing] how those appellate courts (and district courts within those circuits) have ruled in cases involving a moderate limitation in CPP and a restriction to non-production work in the mental RFC," the court

---

In response, Defendant contends that the reference to "able" rather than "unable" is simply a typographical error by the ALJ. Any concern on this point is sufficiently addressed by the ALJ's extensive analysis of Dr. Smith's evaluation later in the decision. (Tr. at 29-30, 31.) For example, the ALJ stated that:
> I give some weight to Dr. Smith's diagnosis of "mild mental retardation" which is referred to a[s] "borderline intellectual functioning" in this decision. Dr. Smith administered some tests (serial 3's, abstract similarities, proverb interpretation, judgment) indicating that the claimant's intellectual ability appeared to be in the low average range. This assessment does not appear to be contradicted by the overall evidence of record.

(Tr. at 31.) Thus, the ALJ accurately recounted and considered Dr. Smith's conclusions based on his testing, and in this context the Court agrees that the apparent typographical error cited by Plaintiff would not warrant a remand in this case.

concluded that "the weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in Mascio supports the view that the non-production restriction . . . sufficiently accounts for [a claimant's] moderate limitation in CPP." Grant, at *7, *9. The Court further explained the rationale for such a holding as follows:

> In Mascio, the Fourth Circuit held only that, when an ALJ finds moderate limitation in CPP, the ALJ must either adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) or explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding "staying on task." Where, as here, the ALJ has included a specific restriction that facially addresses "moderate" (not "marked" or "extreme," see 20 C.F.R. § 416.920a(c)(4)) limitation in the claimant's ability to stay on task, i.e., a restriction to "non-production oriented" work, Mascio does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits.

Grant, at *9. Accordingly, in providing that Plaintiff "should not work in a [f]ast paced or production based work environment[,] but can do entry level or goal oriented work," the ALJ in the present case considered and accounted for Plaintiff's ability to stay on task as required by Mascio.

Moreover, the ALJ specifically explained her decision in this case. As previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> "does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court."

9

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *9 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a Plaintiff's moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)).

In this case, as in Tolbert, the ALJ sufficiently explained why Plaintiff's limitations in concentration, persistence, or pace were accounted for by the RFC. Specifically, the ALJ noted that Plaintiff reported that

> she found it difficult to maintain consistent participation in most tasks. She reported a history of being terminated from employment due to her inability to maintain motivation and symptoms of depression and anxiety. She also reported difficulty interacting in social settings preferring to spend most of her time alone and isolated. I have accommodated these symptoms by limiting the claimant to simple, routine, work tasks with no fast paced production requirements and only occasional interaction with co-workers and supervisors and no sustained interaction with the public.

(Tr. at 27-28.) The ALJ considered the medical evidence and further stated that she had "also taken the claimant's borderline intellectual functioning, her non-severe headaches, and potential side effects from her medications[6] into account by limiting her to simple, routine entry-level goal oriented work that is not fast paced." (Tr. at 29.) Finally, the ALJ gave great weight to the opinions of state agency reviewing psychologist Dr. April L. Strobel-Nuss

---

[6] In finding Plaintiff moderately limited in terms of concentration, persistence, or pace, the ALJ recounted Plaintiff's testimony "that her medication causes her to forget things." (Tr. at 26.)

(initial) and psychiatrist Dr. Bonnie Gregory (reconsideration), both of whom found Plaintiff moderately limited in terms of concentration, persistence, and pace. (Tr. at 30-31, 74-77, 87-93.) Drs. Strobel-Nuss and Gregory opined that Plaintiff nevertheless retained "the ability to carry out very short and simple instructions and is able to maintain attention and concentration for 2 hours at a time as required for the performance of simple tasks." (Tr. at 75, 92.) When ultimately issuing their RFC assessments, both reviewers found it "[r]easonable to limit [Plaintiff] to SRRTs in low social and non[-]production settings." (Tr. at 76, 93.) The ALJ stated that she gave "great weight to their opinion that [Plaintiff] retained the ability to understand and remember very short and simple instructions. This opinion is consistent with the overall evidence of record including [] Dr. Smith's consultative report." (Tr. at 31.) Thus, the ALJ not only adequately accounted for Plaintiff's concentration, performance, and pace limitations in the RFC itself, but also provided additional explanations and bases for doing so in her decision. This is sufficient to create the requisite "logical bridge," and in these circumstances, there is no basis for a remand pursuant to Mascio.

  B. 40-hour workweek

Plaintiff next contends that "[t]he ALJ's finding that [Plaintiff] could sustain a 40-hour workweek is not supported by substantial evidence." (Pl.'s Br. at 16.) In large part, this contention relies upon Plaintiff's previous RFC challenge. Specifically, Plaintiff argues that "[a]s in McBride v. Colvin, No. 1:15-CV-186, 2016 WL 3965106, at *13 (N.D. Ind. July 25, 2016), the ALJ failed to consider [Plaintiff's] ability to maintain concentration, persistence, or pace 'and instead focused on her ability to perform discreet tasks for unspecified periods of time.'" (Pl.'s Br. at 19.) Because, as explained at length above, the ALJ in the present case

properly considered Plaintiff's limitations in concentration, persistence, and pace and accounted for those limitations in the RFC, any argument on this basis fails.

Plaintiff also points to other evidence that she contends supports her inability to maintain full time employment: (1) her previous status as a disabled child, (2) the report of consultative psychologist Anthony Smith, and (3) her scant work history. (Pl.'s Br. [Doc. #12] at 16-18.) However, the ALJ properly considered each of these factors in rendering her decision. With respect to Plaintiff's prior receipt of benefits as a child, the ALJ addressed this issue as an initial matter at the administrative hearing and asked Plaintiff's counsel to clarify Plaintiff's prior disability status. Counsel explained that Plaintiff had received benefits as a child, but that her benefits later ceased when the Social Security Administration determined she no longer qualified as disabled. Specifically, counsel noted that Plaintiff initially qualified as a disabled child based on low IQ scores in the late 1990s. However, upon retesting in 2007, Plaintiff's IQ scores were above 70, leading to the termination of her benefits. (Tr. at 42.) This cessation of benefits occurred approximately five years before Plaintiff filed the SSI application in this case, was fully litigated in a prior proceeding, and was not at issue in the present case. (Tr. at 41-42.) To the extent Plaintiff is relying not on her prior disability status but instead on her current borderline intellectual functioning, the ALJ considered that evidence at length and took that evidence into account in formulating Plaintiff's RFC.

Likewise, to the extent Plaintiff is relying on the consultative report by Dr. Smith, the ALJ considered and addressed that report at length in the administrative decision. Indeed, in determining Plaintiff's limitations in concentration, persistence, and pace, the ALJ specifically considered and relied upon Dr. Smith's conclusion that Plaintiff's intellectual ability appeared

to be in the below average range. (Tr. at 25.) In addition, in considering the opinion evidence, the ALJ gave

> some weight to Dr. Smith's diagnosis of 'mild mental retardation' which is referred to a[s] 'borderline intellectual functioning' in this decision. Dr. Smith administered some tests (serial 3's, abstract similarities, proverb interpretation, judgment) indicating that the claimant's intellectual ability appeared to be in the low average range. This assessment does not appear to be contradicted by the overall evidence of record.

(Tr. at 31.) The ALJ specifically noted that Plaintiff relied heavily on Dr. Smith's statement that Plaintiff "could benefit from vocational rehabilitation services to help her find employment in a structured and highly supervised setting that would allow her to work in some capacity." (Tr. at 29-30, 31, 442.) However, the ALJ gave little weight to this statement and explained her reasons for doing so in detail. (Tr. at 30, 31.) Significantly, the ALJ first found that

> [c]ounsel's argument attempts to extract too much from this comment, which I do not consider dispositive of the case. First, to the extent that this remark may be construed as an opinion regarding the claimant's capacity to work outside of a sheltered work environment, opinions on issues reserved to the Commissioner must be carefully considered to determine the extent to which they are supported by the record as a whole (SSR 96-5p). Although many claimants with severe mental impairments could benefit from vocational rehabilitative services, this does not mean that the same claimants could not work jobs that accommodate their symptoms.

(Tr. at 30); see 20 C.F.R. § 416.927(d). The ALJ then further explained that "the record as a whole does not support the conclusion that the claimant needs to be in a sheltered workshop," and cited the following evidence:

> [Plaintiff] told Rebecca Sandun, M.D. three years after her alleged onset date in February 2012 that she quit her job "due to low pay" and was unsuccessfully searching for a new job. [Plaintiff] was apparently successful in finding employment reporting in April 2012 working part time as a cashier. This record is persuasive evidence that [Plaintiff] quit a job over salary as opposed to being

13

> unable to maintain it because it was not in a sheltered workshop. Moreover, no doctor or therapist ever discouraged [Plaintiff] from working or suggested that her impairments would prevent her from working outside of a sheltered workshop. To the contrary, [Plaintiff's] therapist encouraged [Plaintiff] to submit employment applications and gave her assignments to follow up with any employers with whom she applied. [Plaintiff's] therapist would likely not do this if she believed that her impairments were so severe as to preclude such work. In addition, [Plaintiff] reported enjoying her job and wanting to work additional hours and indicated that she would like to get a second job.

(Tr. at 30) (citing Tr. at 354, 560, 570). Additionally, the ALJ noted that "Dr. Smith did not have the benefit of the medical evidence of record and received all of his information from the claimant at the consultative examination." (Tr. at 30.) The ALJ therefore concluded that "counsel's argument that Dr. Smith's report requires a finding that the claimant's impairments limit her to sheltered work is not persuasive." (Tr. at 30.) Although Plaintiff now argues that the ALJ somehow erred in the above analysis, she fails to identify how or why this may be the case. The ALJ considered and addressed the evidence at length, including the report from Dr. Smith, and the ALJ took that evidence into account in formulating the RFC. The ALJ also set out the reasoning for not adopting a limitation to a sheltered work environment. These determinations are supported by substantial evidence, and the ALJ's explanation provides the sufficient "logical bridge." As such, the Court finds no error.

Finally, Plaintiff argues that the ALJ failed to properly consider Plaintiff's sparse work history as evidence that she could not maintain full-time employment. The ALJ acknowledged Plaintiff's reported history of being terminated from employment due to her inability to maintain motivation and her symptoms of depression and anxiety, and accommodated those issues with specific limitations in the RFC. (Tr. at 27-28.) The ALJ also acknowledged counsel's assertion that Plaintiff "lost her jobs because she was too slow." (Tr. at 30, 48, 63.)

14

However, the ALJ then cited evidence which, at least in part, contradicted that blanket statement. In particular, the ALJ noted that Plaintiff quit one job "due to low pay" in 2012 (Tr. at 30), and reported actively looking for a second job in 2013, when her first job could not provide enough hours (Tr. at 28, 30, 580.) The ALJ further explained that Plaintiff

> quit another job at McDonalds in 2014 before it got "too bad." The record is unclear as to what the claimant meant by "too bad" and in any event, she found another job at Walmart. While these jobs may exceed the claimant's current capacity, the fact that the claimant was able to get the jobs and work at them as long as she could (more than 10 months at Walmart) suggests that her symptoms are not nearly as limiting as she testified.

(Tr. at 30.) Moreover, the ALJ also clearly described the extent to which Plaintiff's impairments were problematic in her past work and identified the portions of the RFC assessment designed to address these issues:

> I appreciate that [Plaintiff] may have experienced difficulty working at places like Walmart and McDonalds due to her up and down mood swings, depression, and irritability. I have accommodated the reasonable symptoms associated with [Plaintiff's] impairments by limiting her to work where she has only occasional interaction with co-workers and supervisors and no sustained interaction with the public. I have also taken [Plaintiff's] borderline intellectual functioning, her non-severe headaches, and potential side effects from her medications into account by limiting her to simple, routine entry level goal oriented work that is not fast paced. However, the overall evidence does not support that the claimant's impairments preclude all work.

(Tr. at 29.) The ALJ thus explained in detail the basis for her determination, and substantial evidence supports the RFC, including Plaintiff's ability to perform the designated activities on a sustained basis.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc.

#11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 13th day of October, 2017.

/s/ Joi Elizabeth Peake
United States Magistrate Judge